IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ST. MICHAEL'S MEDIA, INC.,
    *Plaintiff*

v.

THE MAYOR AND CITY COUNCIL OF
BALTIMORE, *et al*.
    *Defendants.*

Civil Action No. ELH-21-2337

**MEMORANDUM**

On October 12, 2021, this Court issued an Order and Preliminary Injunction ("P.I."), with which the parties are familiar. *See* ECF 46. It concerns the prayer rally and conference that plaintiff St. Michael's Media, Inc. ("St. Michael's") seeks to hold at the Pier VI Pavilion (the "Pavilion") in Baltimore on November 16, 2021.

Defendants Mayor and City Council of Baltimore (the "City")[1]; Baltimore Mayor Brandon M. Scott; and Baltimore City Solicitor James L. Shea (collectively, the "City Defendants") subsequently noted an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit. ECF 47. And, pending disposition of the appeal, they have filed in this Court a "Motion To Stay The Signing Of A Contract Pending Appeal Of Preliminary Injunction." ECF 61 ("Motion to Stay" or "Motion"). The Motion to Stay asks this Court "to stay the signing of any contract between Plaintiff and [defendant] SMG" concerning use of the Pavilion for the prayer rally. ECF 61 at 7-8.[2]

---

[1] Plaintiff sued "The City of Baltimore," but the City's proper name is "Mayor and City Council of Baltimore." *See* Balt. City Charter, Art. I, § 1; ECF 25-1 at 1 n.1. Accordingly, I directed the Clerk to correct the docket to reflect the proper name. ECF 45 at 1 n.1; ECF 46 at 1.

[2] Defendant SMG has not joined the Motion to Stay.

The City Defendants explain that they merely seek a "modest stay" of the "signing of any contract between Plaintiff and SMG for use of the City's venue of the brief time period that the City's expedited appeal is pending." ECF 61 at 7-8. They describe the Motion as one to "stay the execution of a contract between two private parties." ECF 66 at 5. In their view, the P.I. "will, in effect, force SMG to enter into a contract with Plaintiff that did not exist prior to the commencement of this action." ECF 61 at 3. They add: "The City is not asking that Plaintiff and SMG be kept from negotiating the terms of a contract, nor from preparing for the rally, but simply that the contract not be finalized and made binding prior to the City's appellate efforts resolving." *Id*. at 6. According to the City Defendants, in the absence of a stay, the "public interest would very obviously be harmed" because of the potential for violence in connection with the event, the need for increased security that will strain the City's police force, and to avoid "squander[ing]" other public resources. *Id*. at 7.

Plaintiff opposes the Motion to Stay. ECF 64 (the "Opposition"). The City Defendants have replied. ECF 66 (the "Reply"). Plaintiff has moved for leave to file a surreply. ECF 67 ("Surreply Motion").

No hearing is necessary to resolve the Motion to Stay. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual and Procedural Background

The parties are familiar with the factual and procedural background. Therefore, I need not recount the background in detail. Rather, I shall incorporate the factual and procedural background set forth in my Memorandum Opinion of October 12, 2021 (ECF 45), and I shall also provide some minimal background for context.

The litigation began on September 13, 2021, when St. Michael's filed suit against the City; Scott; and Shea. ECF 1. In a "First Amended Verified Complaint" ("Amended Complaint"), ECF 14, plaintiff alleges that the City Defendants have violated plaintiff's rights under the First Amendment to the Constitution by denying plaintiff the right to hold a prayer rally and conference on November 16, 2021, at the Pavilion, situated in downtown Baltimore on Pier VI, in an area of the City known as the "Inner Harbor." ECF 14, ¶ 7. Although the City owns the Pavilion, it is managed by defendant SMG, a private company that operates under the name "Royal Farms Arena." *Id.*

St. Michael's, a non-profit organization, "is a vocal critic of the mainstream Catholic Church," including the United States Conference of Catholic Bishops ("USCCB"). ECF 1, ¶ 66; *see* ECF 14, ¶ 75; ECF 1, ¶ 3. The USCCB plans to meet in Baltimore from November 15 – 18, 2021, at the Waterfront Marriott Hotel, a private facility located near Pier VI. *Id.* ¶¶ 8, 9. Plaintiff asserts that it seeks to hold the prayer rally and conference to criticize the Church, particularly with respect to child sexual abuse committed by members of the clergy, and the Church's protection of the clergy. *Id.* ¶¶ 3, 7-10. And, it wants to do so on a date that coincides with the USCCB's Fall General Assembly, and in a location near the site of the USCCB's meeting. *Id.* ¶¶ 8-10, 42.

To that end, plaintiff engaged in contract negotiations with SMG to rent the Pavilion for the rally. And, it paid the requested $3,000 deposit. *Id.* ¶ 13. On or about August 5, 2021, weeks after plaintiff had paid the $3,000 deposit to SMG for use of the Pavilion on November 16, 2021, SMG, on instruction of the City, notified St. Michael's that plaintiff could not rent the Pavilion. *Id.* ¶¶ 13, 14. The City cited safety concerns linked to some of the people who were identified as speakers at the event. *Id.* ¶¶ 15-19. This suit followed.

Along with the suit, St. Michael's moved for a temporary restraining order ("TRO") and a preliminary injunction. ECF 2 at 13. St. Michael's asked the Court to compel SMG to "fulfill its contractual obligations with St. Michael's" and to enjoin the defendants from "interfering with St. Michael's preparing for and conducting" its rally on November 16, 2021. *Id*. at 13-14. I granted the TRO, in part. ECF 9. In particular, I ordered the City Defendants not to prevent St. Michael's from making arrangements for the rally. *Id.* But, I did not order SMG, a non-party at the time, to execute a contract with plaintiff.

Thereafter, St. Michael's filed its Amended Complaint (ECF 14), adding SMG as a defendant, and adding a contract claim, directed only at SMG. The Amended Complaint contains five "Claim[s] for Relief," the first four of which are lodged against the City Defendants, pursuant to 42 U.S.C. § 1983. I shall refer to each claim as a count.

Count I alleges that the City Defendants violated plaintiff's First Amendment right to free speech. ECF 14, ¶¶ 48-61. Count II alleges that the City Defendants violated plaintiff's "Right of Free Exercise of Religion," as guaranteed by the First Amendment. *Id*. ¶¶ 62-72. In Count III, plaintiff claims that the City Defendants violated the Establishment Clause of the First Amendment. *Id*. ¶¶ 73-83. And, Count IV asserts that the City Defendants violated plaintiff's right of assembly, as protected by the First Amendment. *Id*. ¶¶ 84-98. Count V is lodged against SMG, and seeks specific performance of the alleged contract between plaintiff and SMG. *Id.* ¶¶ 99-113.

St. Michael's also filed an amended preliminary injunction motion. ECF 15 (the "P.I. Motion"). The P.I. Motion sought the same relief that it sought in regard to the original preliminary injunction motion. Defendants opposed the P.I. Motion. ECF 25. St. Michael's replied. ECF 34. At the Court's request (ECF 34), defendants filed a surreply. ECF 37.

On September 21, 2021, St. Michael's filed an "Emergency Motion for Immediate Status Conference And For Order to Show Cause Why Defendants Should Not Be Held in Contempt." ECF 19.  The Court held a telephone conference on the same day.  I denied the motion.  ECF 22.  However, I required SMG to maintain the availability of the Pavilion for the date of November 16, 2021, in the event plaintiff were to prevail with regard to the P.I. Motion.  *Id*. at 2.

The Court held an evidentiary hearing on the P.I. Motion on September 30, 2021, and October 1, 2021, at which testimony was presented by plaintiff.  ECF 43; ECF 44.[3]  In addition, both sides submitted multiple exhibits.

On October 12, 2021, I issued a Memorandum Opinion (ECF 45) as well as an Order and Preliminary Injunction (ECF 46), granting the P.I. Motion in part and denying it in part.  As to Count I, plaintiff's free speech claim, I found, based on the record, that the Pavilion was either a nonpublic forum or a limited public forum.  ECF 45 at 41-53.  As a result, the City would be entitled to impose reasonable restrictions in light of the purpose served by the forum, so long as its reasons were viewpoint neutral.  *Id*. at 44-48, 53-54.  But, I found that plaintiff was likely to succeed on the merits of its free speech and free assembly claims, because the City's decision was not viewpoint-neutral.  *Id.* at 53-73.

In concluding that the City's conduct was not viewpoint-neutral, I focused on the following: 1) the City's stated reasons for cancelling plaintiff's event, *i.e.*, its concern about the provocative rhetoric of plaintiff in connection with the events of January 6, 2021, and its reliance on prior inflammatory rhetoric of some of the rally speakers, which could allegedly lead to violence; 2) the City's unfettered, standards-free discretion; 3) its invocation of the "heckler's veto;" and 4) the emergence during the litigation of justifications for the City's decision that were

---

[3] Defendants elected not to present any testimony.

not reflected in the evidence as to the City's reasons when it made the decision to terminate the event. *Id*. at 53-71.

I also found that plaintiff would suffer irreparable harm in the absence of an injunction, that the balance of equities favored plaintiff, and that an injunction was in the public interest. *Id*. at 82-84. But, I observed that, given the nature of the forum, the City had the right to implement reasonable, viewpoint-neutral limitations anchored in lawful justifications. *Id*. at 71 n.30.

Therefore, I issued a tailored preliminary injunction providing that, until the conclusion of the litigation or further Order of the Court, the City Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them, could not prohibit or impede SMG from entering into a contract with St. Michael's for plaintiff's use of the Pavilion for its prayer rally and conference on November 16, 2021. ECF 46 at 1-2. I also required St. Michael's to provide a $250,000 bond as security, and proof of satisfaction of its agreement to procure $2 million in liability insurance. *Id*.; ECF 45 at 84-86.

In contrast, I found that St. Michael's was not likely to succeed on the merits of its free exercise and Establishment Clause claims. ECF 45 at 72. I found that St. Michael's was not likely to succeed on the merits of its specific performance claim against SMG. *Id*. at 73-82. Thus, I denied plaintiff's request for an injunction to require SMG to execute or comply with a particular proposed contractual document. ECF 46 at 2.

The City Defendants promptly noted an appeal to the Fourth Circuit. *See* ECF 47. They have represented that they plan to move for an expedited appeal. ECF 61 at 1-2.

On October 13, 2021, plaintiff filed an "emergency" show cause motion. ECF 48 (the "Contempt Motion"). Specifically, plaintiff sought an order to show cause as to why defendants should not be held in contempt, and to disqualify counsel for the City Defendants from also

representing SMG, due to an alleged unethical conflict of interest. *Id.* at 7-8.[4] As to the contempt, plaintiff argued that an email sent by SMG representative Teresa Waters to St. Michael's CEO Michael Voris at 10:49 a.m. on October 13, 2021, established that the City Defendants violated the P.I. by impeding SMG from entering into a contract with plaintiff. *Id*. at 2-3. The email stated, in relevant part: "[P]er the City we are still in a holding pattern and not allowed to execute the contract." ECF 48-1 at 2.

Defendants responded in opposition to the Contempt Motion. ECF 53. They also provided copies of email communications between the City's lawyers and SMG during the relevant period.

The Court convened an evidentiary hearing regarding the Contempt Motion on October 14, 2021. ECF 57. At the hearing, testimony was presented from Frank Remesch, the General Manager of the Pavilion,[5] and Waters, executive assistant to Remesch and SMG's booking and contracts manager for the Pavilion. ECF 63 (Hearing Transcript) at 31-57. I found both witnesses to be credible. *Id*. at 58. Their testimony, along with the defense exhibits, showed that Remesch misinterpreted emails sent by counsel for defendants and mistakenly believed that the City's counsel had told him, on behalf of the City, that SMG should not enter into a contract with St. Michael's. *Id*. at 46-57. Remesch then conveyed this incorrect understanding to Waters. *Id*. at 31-46.

The record did not reflect any attempt on the part of counsel for defendants to disobey the P.I., nor any basis to hold defendants in contempt. Notably, the Court's decision was docketed at about 9:30 p.m. on October 12, 2021. Thus, some interested parties were unaware of the ruling

---

[4] Despite this assertion, plaintiff has sometimes characterized SMG as an "agent" of the City. *See, e.g.*, ECF 48 at 6; ECF 63 at 57.

[5] Remesch is also General Manager of the Royal Farms Arena, a distinct venue near the federal courthouse in Baltimore. ECF 63 at 47.

until the next morning. As mentioned, Ms. Waters sent the email in issue at 10:49 a.m. on October 13, 2021. So, that was approximately 13 hours after the Court issued its opinion. And, coupled with the fact that the Opinion is about 85 pages in length and thus took time to review, it is understandable that there was some uncertainty among defendants on the morning of October 13, 2021. At the hearing, plaintiff withdrew the Contempt Motion. ECF 63 at 68; *see* ECF 58.[6]

Of relevance here, at the contempt hearing, and in the parties' submissions, the Court was advised that Mr. Voris conferred with SMG after the issuance of the P.I. and proposed a contract clause providing that, if the City were to prevail on appeal and "is permitted to deny" the rally, SMG would be excused from performance of the contract. In other words, in that circumstance, plaintiff could not use the Pavilion for the rally. ECF 64-3 at 10; *see also* ECF 60-1 at 2; ECF 63 at 11-12, 61-62, 69; ECF 64 at 9. Furthermore, St. Michael's agreed to "indemnify, defend, and hold harmless" SMG "from and against any and all losses, liabilities, claims, damages, and expenses . . . arising from" a cancellation of the rally on this basis. ECF 64-3 at 10.

The next day, Friday, October 15, 2021, the City Defendants filed the Motion to Stay. ECF 61. I then set a briefing schedule for the Motion. ECF 62.

As the Memorandum Opinion indicates (ECF 45 at 81-82; ECF 46 at 2), the P.I. did not order SMG to enter into any particular contract with St. Michael's. However, I cautioned that I anticipated "good faith negotiations" between SMG and plaintiff. *Id*. In the Motion to Stay, the City Defendants argue that the Court's P.I. should not be a basis to "permit Plaintiff and SMG to

---

[6] Plaintiff appears to assert in its opposition to the Motion to Stay (ECF 64 at 1 n.1) that the "apparent law of the case" is that there is no conflict in counsel for the City Defendants also representing SMG in this action. To be clear, the Court has made no such ruling on this issue. At the hearing on plaintiff's Contempt Motion, the Court expressed that plaintiff had yet to provide adequate briefing or authority for its argument. ECF 63 at 12-17, 22.

enter into a contract that the City otherwise could have prevented, without allowing the City first to pursue its expedited appeal of said injunction." ECF 61 at 2-3.

In other words, the City's concern seems to be that, because it is no longer able to block SMG from entering into a contract with St. Michael's, the two parties could enter into a contract before the Fourth Circuit has ruled. And, in effect, this would vitiate the appeal.

## II.     Surreply Motion

As noted, St. Michael's has moved for leave to file a surreply with regard to the City Defendants' Reply regarding the Motion to Stay. ECF 67. Plaintiff asserts that there are "factual errors" in the Reply, "which could mislead the Court." *Id.* at 1.

The filing of a surreply is within the Court's discretion. *See* Local Rule 105.2(a). "But, they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g., Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). A surreply is ordinarily permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted).

I do not see any circumstance rendering a surreply necessary here. Therefore, I will deny the Surreply Motion (ECF 67).

## III.    The Motion to Stay

Fed. R. Civ. P. 62(d) provides: "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

A stay is "'an exercise of judicial discretion' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginia Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). The party requesting a stay bears the burden of showing that a stay is warranted. *Id*. at 433–34. When evaluating a motion to stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 434; *see Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Nero v. Mosby*, No. MJG-16-1288, 2017 WL 1048259, at *1 (D. Md. Mar. 20, 2017).

As the Supreme Court has noted, "[t]here is substantial overlap between these and the factors governing preliminary injunctions . . . not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken*, 556 U.S. at 434 (internal citation omitted).

The first two factors are the "most critical." *Id.* Nevertheless, "[t]he grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)). "Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777.

The parties dispute how best to characterize the "status quo" in this action. *See* ECF 61 at 2-3; ECF 64 at 4-6; ECF 66 at 3-4. "The status quo to be preserved by a preliminary injunction . . . is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the 'last uncontested status between the parties which preceded the controversy.'" *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 378 (4th Cir. 2012) (quoting *Stemple v. Bd. of Educ. of Prince George's Cty.*, 623 F.2d 893, 898 (4th Cir. 1980)). Defendants are certainly correct (ECF 61 at 3) that the status quo prior to the action was that no contract existed. As the Court has found (ECF 45 at 73-82), no contract had likely been formed between the parties. However, the last *uncontested* status between the parties was the negotiation between St. Michael's and SMG to reach a contract without the intervention of the City in the process, given that the City's intervention has been very much contested.

### A. Likelihood of Success on the Merits

The Court begins with the first factor—the defendants' likelihood of success on the merits of their appeal. *Nken*, 556 U.S. at 434. The City Defendants advance several reasons as to why the Court is likely to be reversed on appeal. ECF 61 at 3-6.

The Court's analysis and conclusions were thoroughly presented in its Memorandum Opinion. ECF 45. Nevertheless, I briefly discuss why I do not view the City Defendants' arguments as persuasive.

The City Defendants note correctly that the forum analysis in the Memorandum Opinion was based on a preliminary record and thus not definitive. ECF 61 at 3. Of course, the Court was only able to rule based upon the record provided by the parties—including defendants, who presumably possess more information about the operation of the Pavilion than anyone. But, more to the point, on the basis of this record, I ruled in the City's favor; I determined that the Pavilion

was either a nonpublic forum or a limited public forum. That is the kind of venue with the least amount of First Amendment protection. *See* ECF 45 at 49-53. A reversal on this basis would not inure to the City's benefit.

The City Defendants also take issue with the Court's finding concerning viewpoint discrimination. ECF 61 at 3-4. According to the City Defendants, this conclusion was "speciously inferred from the timing of the City's explanations of its decisions." *Id*. at 3. They insist that the additional grounds presented during the litigation "were present from the beginning of the decision-making process . . . ." *Id*. at 4.

As I noted in the opinion (ECF 45 at 57), "the government rarely flatly admits it is engaging in viewpoint discrimination." *Ridley v. Mass. Bay Trans. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004), *partially abrogated on other grounds by Matal v. Tam*, ___ U.S. ___, 137 S. Ct. 1744 (2017). I found that plaintiffs were likely to succeed on the claim of viewpoint discrimination on the basis of four considerations, drawn from the evidence: the City's reliance on the provocative rhetoric of plaintiff and some rally speakers to justify its decision; its seemingly unfettered, standards-free discretion; its invocation of the "heckler's veto;" and the appearance in the litigation of justifications for its decision that were not reflected in the evidence regarding the City's concerns when it made the decision to terminate the event. ECF 45 at 53-71. In other words, the City offered after-the-fact rationalizations for its decision.

Again, the Court must decide on the basis of the evidence before it. Defendants had ample opportunity to provide evidence to show that the more recent justifications, such as a burden on the police, were actually concerns from the outset. But, it never did so.

Insofar as the City Defendants appear to suggest that they will provide additional, unspecified evidence on appeal as to the basis for the City's decision-making (ECF 61 at 3-4),

supplementing the factual record in such a way is not the typical procedure at the appellate level. After all, "'[t]he only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court.'" *Gardner v. Bishop*, 983 F.2d 1056, 1993 WL 7947, at *3 n.10 (4th Cir. 1993) (Table) (quoting *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir. 1986), *cert. denied*, 481 U.S. 1070 (1987)).

Further, the City Defendants argue that "the Court applied a strict scrutiny standard" that was inappropriate given the commercial nature of the Pavilion and the City's decision. ECF 61 at 4. This simply misapprehends the Court's decision. Upon finding that the Pavilion appears to be a nonpublic forum or a limited public forum, I explicitly applied the more lenient standard of First Amendment scrutiny: a restriction on speech is permissible so long as it is reasonable and viewpoint neutral. *See* ECF 45 at 44-54; *see also, e.g.*, *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1983); *Child Evangelism Fellowship of S.C. v. Anderson School Dist. Five*, 470 F.3d 1062, 1067 (4th Cir. 2006); *Child Evangelism Fellowship of MD, Inc. v. Montgomery Cty. Pub. Schools*, 457 F.3d 376, 383 (4th Cir. 2006); *Goulart v. Meadows*, 345 F.3d 239, 248-49 (4th Cir. 2003) (all discussing this standard).[7]

Indeed, I took the commercial, proprietary nature of the Pavilion into account when classifying it as either a nonpublic or a limited public forum. *See* ECF 45 at 48-49. But, this does

---

[7] Having found likely viewpoint discrimination, the Court's opinion briefly referenced strict scrutiny, in a paragraph on page 71, merely to point out that viewpoint discrimination is necessarily subject to strict scrutiny, and the City's actions could not survive strict scrutiny. ECF 45 at 71; *cf. Sons of Confederate Veterans, Inc. ex rel. Griffin v. Comm'r of Va. Dep't of Motor Vehicles*, 288 F.3d 610, 626-27 (4th Cir. 2002) (finding a statutory provision to be "an instance of viewpoint discrimination that does not survive strict scrutiny review and accordingly is impermissible.").

not alter the basic standard requiring reasonableness and viewpoint neutrality. *See, e.g.*, *Atlanta Journal and Constitution v. City of Atlanta Dep't of Aviation*, 322 F.3d 1298, 1301, 1306-07 (11th Cir. 2003) (applying this standard to explicitly "proprietary" government activity); *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 22-25 (1st Cir. 2002) (applying this standard to a commercial-type pier); *Chicago Acorn v. Metro. Pier and Exposition Auth.*, 150 F.3d 695, 699-701 (7th Cir. 1998) (applying viewpoint neutral requirement to commercial-type facility); *Florida Gun Shows v. City of Fort Lauderdale*, No. 18-62345-FAM, 2019 WL 2026496, at *8-*10 (S.D. Fla. Feb. 19, 2019) (applying reasonableness and viewpoint neutrality to proprietary decision as to use of convention center).

Moreover, the City Defendants argue that the Court misconstrued the "fundamental nature" of the case by not recognizing that the City has the discretion to decline to host an event because of "reasonable safety concerns and commercial interests." ECF 61 at 4-6. To the contrary, the Court repeatedly recognized the City's ability to impose reasonable, viewpoint-neutral limitations in response to legitimate safety concerns. ECF 45 at 64, 71 n.30. But, the City may not simply invoke these interests as a pretext to bypass its constitutional obligation to be viewpoint neutral. "The existence of reasonable grounds for limiting access to a nonpublic forum . . . will not save a regulation that is in reality a facade for viewpoint-based discrimination." *Cornelius*, 473 U.S. at 811.

In short, none of the arguments advanced by the City in the Motion to Stay persuade me that the City is likely to prevail on appeal.

### B. Whether Defendants Will Be Irreparably Injured Absent a Stay

The second factor a court must consider in evaluating a motion to stay is whether the applicant will be irreparably injured absent a stay. *Nken*, 556 U.S. at 434. The City Defendants

argue that, without a stay, they will suffer irreparable harm because SMG will be "forced" to sign a binding contract with St. Michael's during the pendency of the appeal. ECF 61 at 1. They also assert that "the City may suffer the irreparable harm of physical violence, civil unrest, and the denial of its contractual and appellate rights if the stay is not granted." *Id*. at 7.

The City's concern appears to be that if SMG is required to enter into a contract with plaintiff, and thereafter the City wins on appeal, the appellate victory will be hollow because SMG would be bound by the contract. The City's concern is not frivolous.

It is possible that the Court's decision could be reversed by the Fourth Circuit on appeal. If, in the meantime, SMG has entered into a contract with St. Michael's for plaintiff's use of the Pavilion on November 16, 2021, then the Fourth Circuit's resolution of the legal dispute in defendants' favor could be largely pyrrhic. Even though the City would have been found to have acted within its rights in blocking the rally, SMG would be contractually bound to host the rally— or, at the very least, face a potentially bruising breach of contract dispute.[8]

The P.I. enjoins the City Defendants from prohibiting or impeding SMG from entering into a contract with St. Michael's for the rally. ECF 46 at 1-2. But, as I said, the City retains the ability to implement reasonable, viewpoint-neutral limitations, anchored in lawful justifications. ECF 45 at 71 n.30.

Moreover, the City's concern may be adequately addressed without the requested stay. The Court is not privy to negotiations between SMG and St. Michael's. But, as discussed, both plaintiff and defendants disclosed in their filings and at the contempt hearing that St. Michael's has proposed to SMG a solution that would seem to address the City's concerns.

---

[8] Indeed, plaintiff appears to acknowledge that this would be its course of action if the City cancelled a contract between St. Michael's and SMG following a decision in the City's favor by the Fourth Circuit. *See* ECF 64 at 4 n.6.

In particular, St. Michael's has proposed a contract provision that excuses SMG's performance of the contract if the City Defendants prevail on appeal. ECF 64-3 at 10. Furthermore, St. Michael's has agreed to "indemnify, defend, and hold harmless" SMG "from and against any and all losses, liabilities, claims, damages, and expenses . . . arising from" a cancellation of the rally on this basis. *Id*. This would seem to alleviate the City's concerns; if SMG enters into a contract with St. Michael's and then this Court's decision is reversed, defendants would not be required to host the event.

Defendants have described their legitimate concern that a contract between St. Michael's and SMG pending the appeal would effectively decide the case in favor of St. Michael's, even if the Fourth Circuit reverses this Court. But, the opposite is also true: defendants could run out the clock by obtaining a stay, with no decision by the Fourth Circuit in time for the rally.

As I see it, this factor does not tip the scales in favor of a stay of the P.I. *Cf. Hilton*, 481 U.S. at 77 (recognizing that "the traditional stay factors contemplate individualized judgments in each case").

### C. Whether Issuance of a Stay Will Substantially Injure Other Parties

The third factor requires assessing "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. In this case, the other interested party is, of course, St. Michael's. Defendants argue that any harm to St. Michael's from a stay will be, at most, a slight "annoyance at having to wait to sign a contract." ECF 61 at 7. They argue there is no practical need for such a contract at this point, because plaintiff did not have a signed contract for its 2018 rally at the Pavilion "until just a few weeks before" the event. *Id*. at 6. Plaintiff contests this argument. ECF 64 at 8-9.

However, the City Defendants seem to overlook that the Fourth Circuit is not required to decide this case by any particular date. And, November 16, 2021, is less than one month away. A stay pending a ruling by the Fourth Circuit—on some unknown date—could easily mean that the rally could not go forward, even if plaintiff were to prevail. A decision favorable to plaintiff could come too late to undo the stay.

Moreover, defendants' argument based on the 2018 event is not well-taken. Clearly, we are "just a few weeks before" the event. There is no indication that arrangements for the 2018 event were accompanied by the degree of uncertainty and controversy that exist for this year's event. And, plaintiff notes that, because of the larger size for the 2021 event, "logistics and planning is more complicated" than was needed for the 2018 event. ECF 64 at 8.

Plaintiff represents that "[t]he City Defendants' continued interference has already made it significantly more difficult to hold the November 16 prayer rally as planned, and this difficulty compounds each day the City continues to forbid SMG from signing the agreement in violation of this Court's Orders." *Id*. at 8. As described to the Court, the rally is a complicated undertaking, with many moving pieces, participants, and costs. Having a contract with SMG provides St. Michael's with some measure of certainty, so that preparations can be adequately completed.

In sum, I cannot agree with defendants that the injury to St. Michael's from a stay would be as minor as they suggest. To the contrary, it appears to me that the continuing burden to St. Michael's from not yet having a signed contract with SMG is substantial and increasing with each passing day.

There is a pronounced risk that, if the signing of a contract is pushed to the last minute, the ability of St. Michael's to host its rally will be seriously harmed. "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"

*Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### D. Public Interest

The final factor calls for an assessment of the public interest. *Nken*, 556 U.S. at 434. Defendants argue that failure to grant a stay would harm the public interest, given the likelihood of violence and disruption from the rally going forward, as well as the requirement of an increased security presence; the public's interest in not cutting short resolution of a dispute such as this one; and elected officials' interest in being able to utilize their discretion. ECF 61 at 6-7. Plaintiff argues that there is no public interest in permitting an infringement on First Amendment rights, nor in interfering with two entities' ability to enter into a contract. ECF 64 at 9.

Much of this dispute simply rehashes the substance of the litigation. On the whole, this factor favors the denial of a stay. As plaintiff notes, "the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc). To the extent there is any real risk of violence and disruption from the rally—a proposition for which defendants have presented little actual evidence—then the danger that signing a contract means the rally will go forward regardless of the Fourth Circuit's ruling should be obviated by a clause of the type discussed, *supra*.

### III. Conclusion

For the reasons stated above, I shall deny the City Defendants' Motion to Stay (ECF 61). I shall also deny plaintiff's Surreply Motion (ECF 67).

An Order follows.

Date: October 19, 2021.             /s/
                                    Ellen Lipton Hollander
                                    United States District Judge