UNITED STATES DISTRICT COUNT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| ST. MICHAEL'S MEDIA, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No.: 21-cv-02337 ELH |
| MAYOR AND CITY COUNCIL ) | |
| OF BALTIMORE *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MAYOR AND CITY COUNCIL OF BALTIMORE, BRANDON M. SCOTT, JAMES L. SHEA, AND SMG'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION <u>FOR LEAVE TO FILE SECOND AMENDED VERIFIED COMPLAINT</u>**

Defendants, Mayor and City Council of Baltimore, Mayor Brandon M. Scott, and City Solicitor James L. Shea, (collectively and individually the "City") and SMG ("SMG") (the City and SMG will be collectively and individually referred to as the "Defendants") by undersigned counsel, submit this response in opposition to the motion to file a second amended verified complaint by Plaintiff St. Michael's Media, Inc. a/k/a Church Militant ("Plaintiff", "SMM", or "Church Militant") [ECF 95].

   **I.**      **Introduction**

Defendants adamantly oppose Plaintiff's Motion for Leave to File a Second Amended Complaint. The harm to Defendants if Plaintiff is granted leave to amend their Complaint for a second time, ninety-two (92) days after filing suit, after the City has filed a Motion to Dismiss and agreed to give Plaintiff additional time to respond to the same, after Plaintiff's Motion for Preliminary Injunction along with a two-day hearing regarding the same has been completed, after the Fourth Circuit denied Plaintiff's Cross-Appeal on the contract issue as moot, and after

1

the event for which Plaintiff sought the preliminary injunction was concluded, *i.e.*, it accepted and realized the actual benefit of the entire preliminary injunction process, is severe.

It is not in the interest of justice to allow Plaintiff the repeated opportunity to attempt to conjure a cognizable and legitimate injury in order to pursue and, indeed, extend this litigation. Furthermore, Plaintiff's Motion for Leave to Amend should be denied as their proposed amendments would be futile because the Second Amended Complaint's new claims and requests for relief would still not withstand a motion to dismiss. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Finally, the proposed Second Amended Complaint has apparently been filed in bad faith and with an improper motive. It contains allegations that Plaintiff's counsel knows to be false and therefore, if allowed, will likely be followed by a counterclaim and request for relief under Fed. R. Civ. P. 11.

**II.      Background**

The factual background is well known to this Court and all parties involved. On or about September 13, 2021, Plaintiff St. Michael's Media, Inc. filed this suit seeking injunctive relief, declaratory relief, and 28 U.S.C. §1988 damages for alleged First Amendment violations regarding the use of the MECU Pavilion (also known as Pier VI), an entertainment and concert venue, on November 16, 2021 for an event they stylized as a "prayer rally" to protest alleged abuses by American Catholic Bishops. [ECF 1]. For that rally, Plaintiff advertised and insisted on the appearance of at least two individuals - Steve Bannon and Milo Yiannopoulos - whose prior events resulted in violence, personal injuries, and damage to government owned property. Plaintiff previously held a prayer event at the MECU Pavilion, but Messrs. Bannon and Yiannopoulos were not advertised for the same and they did not appear.

Subsequently, on or about September 15, 2021, Plaintiff filed a First Amended Verified Complaint adding Defendant SMG as a party and asserting a claim against them for specific

2

performance. [ECF 14]. In the First Amended Complaint, Plaintiff acknowledged its understanding of the relationship between SMG and the City; namely, that SMG managed the MECU Pavilion entertainment venue while the City owned the facility. *See* First Amended Verified Complaint ("1st Am. Comp.") [ECF 14, p. 2 of 17, ¶7 and ECF 14-1]. Plaintiff also attached correspondence between SMG and the City detailing that the relationship between those parties is contractual [ECF 14-2, p. 2 of 3]. According to Plaintiff, it added SMG to the suit "solely for the purpose of being subject to this Court's issuance of injunctive relief." [ECF 14, p. 2 of 17, ¶7]. Further, in the 1st Am. Comp., Plaintiff's prayers for injunctive and declaratory relief only relate to the November 16, 2021 event. *See* ECF 14, *passim*.

After a two-day hearing, this Court issued an 86-page memorandum opinion and associated order. [ECF 45-56]. The Court granted Plaintiff's request for injunctive relief against the City; however, it denied the claim for specific performance against SMG. *See* ECF 45, p. 73-81 of 86. The City filed an appeal related to the injunction and Plaintiff later filed a cross-appeal related to the specific performance ruling. [ECF 47, 74].

After the Court issued the preliminary injunction order, SMG and Plaintiff conducted a negotiation for a Use License Agreement for the November 16, 2021 event. On October 21, 2021, in-house counsel for SMG, Bruce Hanson, e-mailed Plaintiff's president and counsel of record to discuss contract terms. A true and correct copy of Mr. Hanson's e-mail is attached hereto and incorporated herein as **Exhibit 1**. Mr. Hanson made Plaintiff aware that SMG's risk management forwarded the Court's 86-page memorandum to an independent consultant who recommended a range of coverage that SMG request in comprehensive liability insurance, *i.e.*, coverage for personal injuries, property damages, and any lawsuits that could result because of the November 16 event. *See* Exhibit 1. The consultant, Marsh USA, advised SMG

to request insurance "in a minimum amount of $10M for this event, reserving the right to increase the amount up to $25M as events unfold." *Id*.

During the contract negotiations, counsel for SMG, Marc Randazza attempted to initiate ex parte communications with the Court's chambers, prompting the court to schedule a series of telephonic status conferences beginning on October 22, 2021. *See* Tr. of Telephone Conf. (D. Md. Oct. 22, 2021) attached hereto and incorporated herein as **Exhibit 2**, 2:24-3:2. In addition to October 22, 2021, conferences were held (usually prompted by the actions or at the request of Plaintiff's counsel) on October 27, 29 and November 2, 2021. Counsel for Plaintiff, Marc Randazza and/or David Wachen, along with Plaintiff's President Gary Michael Voris, the signatory for each of Plaintiff's verified pleadings, including the proposed verified Second Amended Complaint were present at all the telephone conferences. *See* Ex. 2, 1; Tr. of Telephone Conf. (D. Md. Oct. 27, 2021) attached hereto and incorporated herein as **Exhibit 3**, 1, Tr. of Telephone Conf. (D. Md. Oct. 29, 2021) attached hereto and incorporated herein as **Exhibit 4,** 1; Tr. of Telephone Conf. (D. Md. Nov. 2, 2021) attached hereto and incorporated herein as **Exhibit 5**, 1**.** Further, Plaintiff's insurance agent, Daniel Schwartz was present at the October 29 conference. *See* Ex. 4, 1.

During these on the record conferences, SMG and Plaintiff expressed, *inter alia*, their positions about the contract negotiations generally, SMG's request for comprehensive liability insurance, and Plaintiff's proof thereof. At the October 27, 2021 conference, Mr. Hanson made clear that the City was not in any way involved in the insurance issue. *See* Ex. 3, Tr. 20:24-21:11. Instead, considering the facts detailed in the Court's memorandum, SMG sought the advice of Marsh USA regarding allocating risk for the event described in the Court's opinion as Plaintiff was seeking the use of a facility for which SMG is responsible to maintain and for an event that SMG would bear responsibility in the absence of adequate comprehensive liability

4

insurance. *See, id*. At that time, Mr. Hanson expressed to Plaintiff, its counsel, and the Court Marsh's suggestion that he previously e-mailed to Plaintiff's counsel. *See* Ex. 3, Tr. 23:1-24:17. During that telephone conference, Mr. Hanson was referring directly to the e-mail SMG received from Marsh—on the record. *See, id*.

At the October 29, 2021 telephone conference, Mr. Schwartz appeared on behalf of Plaintiff. He expressed that he had trouble procuring the requested insurance for Plaintiff once the issue went to underwriting at the prospective carrier(s) and that cost was an issue for Plaintiff. *See* Ex. 4, Tr. 22:6-16. The Court suggested that Mr. Hanson look into reducing the price of the venue rental to offset the cost of the insurance, *i.e*., SMG make a monetary concession to allow Plaintiff to be able to hold the event in light of their alleged financial issue related to the insurance. *See* Ex. 4, Tr. 32:9-19. Plaintiff's counsel admitted that it was not charging admission for the event. *See, id*. Plaintiff could not have expected a profit from the event.

Eventually, SMG agreed to reduce the amount of the venue rental, take the reduced amount out of its own profits, and lower its request for insurance resolving the insurance issue. On November 2, 2021, Plaintiff's counsel Mr. Randazza confirmed that the insurance issue was resolved and he was happy with the resolution:

> Mr. Randazza: Your Honor, I am delighted to tell you that there is very little on the table. The parties appear to have a full meeting of the minds on modifying some terms to make everyone happy. The only thing that we have left with is that it appears that SMG is continuing to require a contractual clause that I believe really requires us to give up all the rights that we earned in the preliminary injunction…[a]nd other than that, we have nothing else we require your assistance with.

Ex. 5, 3:14-4:7. At that time, Mr. Randazza admitted that the only outstanding issue, from the Plaintiff's perspective, was a clause contained in all previous proposed agreements between

Plaintiff and SMG that allowed SMG to cancel the event for certain reasons - this same clause was also included in the agreement between SMG and Plaintiff for the event Plaintiff held in 2018. *See, id*. At that time, neither Plaintiff nor its counsel expressed that they felt the contract was procured by fraud or that the insurance was an issue. Indeed, the Court made herself available to Plaintiff and its counsel continually throughout the contract negotiations when they raised any issues about those negotiations. *See* Ex. 2-5, *passim*.

On or about November 4, 2021, the Use License Agreement for the November 16 event was duly executed and on November 13, 2021 the Fourth Circuit denied Plaintiff's cross-appeal of the specific performance injunction issue as moot. The Fourth Circuit's November 13, 2021 order is attached hereto and incorporated herein as **Exhibit 6**. Plaintiff held its event at the MECU Pavilion on November 16, 2021 as planned. Mr. Bannon was not present; he had just been arrested for criminal contempt related to his alleged refusal to provide discovery to Congress regarding the January 6 riot at the Capitol. *See* Caroline Linton and Melissa Quinn, *Steve Bannon surrenders to face criminal contempt of Congress Charges*, CBS News (Nov. 16, 2021) https://www.cbsnews.com/news/steve-bannon-surrenders-criminal-contempt-january-6-committee-subpoena/ (last accessed December 13, 2021). Therefore, Plaintiff was awarded, accepted, and gained the benefit of all injunctive relief they sought related to the November 16, 2021 event or their request was denied as moot as it related to SMG in light of dual execution of the November 2021 Use License Agreement. No pleading filed by Plaintiff included allegations regarding any contractual or constitutional issues related to any future or past events regarding the City or SMG. And, Plaintiff has already admitted through counsel that they were not charging a monetary admission fee for the event.

On November 22, 2021, Mr. Randazza e-mailed counsel for SMG, including Mr. Hanson, and suggested that Plaintiff intended to amend its complaint to include, *inter alia*, a

count for fraud against SMG, to add them as a "full defendant" to the case, and to seek monetary damages and 28 U.S.C. §1988 damages against SMG—a private entity.  *See* **Exhibit 7**.  The purported fraud allegations are that Marsh never made the insurance recommendation relayed by Mr. Hanson.  *See, id*.  To allay any doubt that Marsh, indeed, made the recommendation Mr. Hanson conveyed, on November 23, 2021, he e-mailed Mr. Randazza and Mr. Wachen a copy of the communication from Marsh to SMG that related to the insurance recommendation for the November 16, 2021 event.  *See* Ex. 7.[1]

One week after receiving the information requested, Messrs. Randazza and Wachen filed a Motion for Leave to File a Second Amended Complaint and proposed Second Amended Complaint alleging that Marsh never made the insurance recommendation that those attorneys received from Mr. Hanson a week prior.  *See* ECF 95, 95-2.

The actions of Plaintiff and its counsel have made their motivations in seeking leave to file a second amended complaint are clear.  After having gained the benefit of the injunctive proceeding, gaining monetary concessions from SMG, obtaining a newly executed contract from SMG, and holding their event rendering their prior injunctive relief moot and claims for compensatory damages against the City spurious, at best, Plaintiff now seeks to extend this litigation and potentially gain the benefit from an increased claim for 28 U.S.C. §1988 attorney's fees.

### III.        Standard of Review

Under Rule 15 of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). Although such motions may be

---

[1] For the purposes of this motion, the Defendants have included only the communications between Plaintiff's counsel and SMG.  If the Court desires, SMG can and will provide her with an in-camera copy of the Marsh communication or file it under seal.

7

granted liberally, a district court may deny leave if amending the complaint would be prejudicial, is made in bad faith or would be futile. *See Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002)(quotation marks omitted). Justice does not require the allowance of an amendment under these circumstances. Futility means the proposed amended complaint fails to satisfy the requirements of the federal rules. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) and *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, *or could not withstand a motion to dismiss*." Moore's Federal Practice § 15.15[3], at 15-48 (3d ed. 2006) (emphasis added).

### IV. Argument

**A. Plaintiff's Proposed Second Amended Complaint Fails to State A Claim Related to Any Allegation That SMG Is A State Actor.**

Plaintiff seeks to add a claim that SMG is a state actor, acting in concert with the City and at the direction of the City, and as such seeks to amend the complaint to include claims that SMG violated Plaintiff's constitutional rights. *See* ECF 95 at 2-3 of 9. As has been established on the record, and by this very court, SMG is a commercial entity that is in a contract with the City of Baltimore to manage the Pier VI, a City owned property. *See* ECF 14-2, p. 2 of 3; *see also* ECF 45, p. 73-81 of 86. The First Amendment specifically constrains governmental actors from violating the constitutional rights of private entities. *Manhattan Comm. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019). "Under that doctrine…a private entity may be considered a state actor when it exercises a function 'traditionally exclusively reserved to the State.'" *Id*. (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). Therefore, state action depends on the relationship between the state and the private

8

entity. The actions of a private entity will be considered a state action when "the alleged infringement of federal rights [is] 'fairly attributable to the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Plaintiff has utterly failed to indicate how SMG could be considered a state actor in the context of this litigation; their proposed pleading certainly does not pass muster on this point. The question that must be asked by the Court regarding whether a private actor is engaging in state action is as follows – "is the alleged infringement of federal rights fairly attributable to the State?" *Rendell-Baker v. Kohn* 457 U.S. 830, 838 (1982). Here, the answer is a resounding "no." The management of Pier VI by SMG does not constitute the delegation of a constitutional obligation to a private party. *West v. Atkins*, 487 U.S. 42, 54–55 (1988)). Further, the City's contract with SMG does not constitute the delegation of a public function that is traditional reserved exclusively to the state as managing entertainment venues is not a traditional government function (*Rendell-Baker*, 457 U.S. at 842) and the activity of running a concert venue is not "entwined with governmental policies" or government actors such that it constitutes state action (*Evans v. Newton*, 382 U.S. 296, 299 (1966)). Further, simply sharing the same litigation counsel does not constitute "joint action" and Plaintiff has provided no citation to any law stating as much.

According to the allegations and attachments to Plaintiff's pleadings, it negotiated contractual terms with SMG–a private entity. Finally, the action for which the Plaintiff is complaining–the decision to not rent the MECU Pavilion to Plaintiff was done by the City, not SMG. Therefore, the alleged state action has already been pled against the party who allegedly committed the action. Plaintiff is seeking an amendment to "merely restate the same facts as the original complaint in different terms…" Moore's Federal Practice § 15.15[3], at 15-48 (3d ed. 2006) (emphasis added). That is futility by definition.

As Plaintiff's attempt to amend the complaint to add a claim that SMG as a state actor is futile as a matter of law and the underlying allegations have already been asserted against the government, Plaintiff's request to amend should be denied.

### B. Plaintiff's Proposed Second Amended Complaint Fails to State a Claim for Breach of Contract and Promissory Estoppel Against The Defendants.

Plaintiff states that it seeks to add a "breach of contract claim" against SMG in this matter. *See* ECF 95 at 4-6 of 9. Bizarrely enough, in Plaintiff's motion to amend, it states that "[w]hile the Court did not find that there was a complete contract, the Court did find that at least one material term had been agreed upon." *See Id*. at 4. However, as Plaintiff is well aware, and as undersigned counsel is also well aware, a single, agreed upon "material term" does not a contract make. In fact, based on the allegations and the exhibits submitted by Plaintiff, as attached to its First Motion to Amend, no contract existed whatsoever. As has been discussed, *ad nauseum* at this point, no contact existed between Plaintiff and SMG until November 4, 2021 as negotiations were ongoing and negotiations, as is relatively standard in contract law, do not make a contract.

In fact, Plaintiff submitted the prior unexecuted, incomplete agreement, as an exhibit to its First Amended Verified Complaint. *See* ECF 14-1. Plaintiff has not and cannot allege that there was a final executed agreement prior to November 4, 2021 and the four corners of irs proposed Second Amended Complaint certainly fail to sufficiently plead the elements of any executed contract. Further, it is not clear how Plaintiff has suffered any losses or what they will assert to allege the breach of contract claim as, in order to have a breach claim in the first place, a valid contract needs to exist.

Under Maryland law, the formation of a contract requires the mutual assent of the parties. *Cockran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (Md. 2007). Mutual assent has two requirements: (1) intent to be bound and (2) definiteness of terms. *Id*. Although

10

acceptance can be accomplished by "acts as well as words," there must be evidence that the party against whom enforcement is sought intended to be bound. *See Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 396 A.2d 1090, 1094 (Md. 1979) and *Cockran*, 919 A.2d at 714. As a general rule, silence and inaction upon receipt of an offer cannot operate as acceptance. *See International Broth. of Teamsters v. Willis Corroon Corp.,* 369 Md. 724, 738 n. 3, 802 A.2d 1050, 1058 n. 3 (Md. 2002). Further, when reviewing the existence of a contract, courts rely on parol evidence. *Cockran*, 919 A.2d at 708.

Here, as has been stated numerous times before on the record, there was neither an intent to be bound by either party or definiteness of terms prior to the execution of the final contract on November 4–a document for which no breach is alleged. According to Plaintiff's motion, the only issue it can come up with to assert some kind of breach is that SMG required more than 2 million dollars in insurance for the rally. *See* ECF 95 at 5-6 of 9. However, Plaintiff then executed a contract with SMG agreeing to provide comprehensive liability insurance for more than 2 million dollars. Further, in this Court's Memorandum Opinion granting Plaintiff's request for an injunction against the City, only, the Court agreed that no contract existed for Plaintiff to enforce. *See* ECF 45, p. 73-81 of 86.

Plaintiff's proposed claim for promissory estoppel fails for this reason and would be futile as well. *See Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc*., 342 Md. 143, 166 (1996). Again, the four corners of Plaintiff's First and Proposed Second Amended Complaints include the exhibits detailing the contractual negotiations between the parties. According to those communications, which are part of the pleadings, there was no "clear and definite promise" that produced any forbearance to the detriment of Plaintiff only active negotiations between arms length parties. *See, id*. Again, the only term that Plaintiff has identified regarding the alleged "promissory estoppel" is the amount of comprehensive liability insurance requested for

11

the event. *See* ECF 95, p.4-5 of 9. The record is clear and was detailed before the Court and via the e-mail from Marsh USA that the amount of comprehensive liability insurance required for the November 16 event changed because of Marsh's assessment after reviewing the Court's 86-page memorandum–it was not compelled by the City or SMG, for that matter. *See* Ex. 3, Tr. 20:24-21:11 and 23:1-24:17. Further, Plaintiff has not identified any forbearance related to the insurance assessment–it eventually executed a Use License Agreement with SMG and contracted with vendors to hold the November 16 event.

Simply, Plaintiff is aware that there was no executed contract or definite promise until November 4, 2021 when both SMG and Plaintiff signed the Use License Agreement for the November 16, 2021 event. As such, there is nothing for Plaintiff to seek damages for as there was no enforceable contract, agreed to by both Plaintiff and SMG to be breached and Plaintiff has offered no evidence that SMG breached the November 4, 2021 agreement.

Finally, Plaintiff seeks damages for breach of contract and promissory estoppel "against all Defendants." *See* ECF 95-2, p. 23. Plaintiff has not alleged that they attempted to or entered into any contract with the City. *See* ECF 95-2, *passim*. Therefore, any demand to seek damages against the City for those claims fails as a matter of law.

### C. Plaintiff's Purported Claim For Tortious Interference Fails As A Matter of Law; Any Amendment Would be Futile.

Plaintiff also seeks to amend its complaint to add a claim of tortious interference against the City with regards to the contract between Plaintiff and SMG. Without delving too deep into the reason this claim should fail as a matter of law, the first requirement for tortious interference is the "existence of a contract between Plaintiff and a third party." *Fowler v. Printers II, Inc.*, 89 Md. App. 448, 466 (1991). As has been discussed *supra*, no such contract existed and the exhibits attached to Plaintiff's First Amended Complaint and proposed Second Amended Complaint show that conclusively. Further, tortious interference requires a breach

12

of contract by the third party as well as resulting damages to the plaintiff. *Id*. Again, and as discussed *supra*, the third party in question here, SMG, had no contract to breach prior to November 4, 2021, so Plaintiff's claim fails on that point as well. Finally, Plaintiff's event did not involve the sale of tickets and was not a profit generating undertaking. *See* Ex. 4, Tr. 32:9-19.

Therefore, Plaintiff has no claim for damages in this matter and, in fact, received a windfall in the form of SMG discounting some of the fees and costs associated with renting Pier VI for the event to offset the alleged financial burden of the insurance. *See supra*. Plaintiff's attempt to now imply that there was tortious interference on the part of the City with a non-existent contract between Plaintiff and SMG is not only a bad faith argument, but also completely ludicrous in light of the circumstances that have led to this point of the litigation in this matter. Any amendment to allow this claim would be futile. As such, Plaintiff's motion for leave to amend should be denied.

    **D. Counsel For Plaintiff Requested and Was Provided With Marsh USA's Insurance Assessment Before Filing The Motion For Leave to Amend; The Decision To Allege Fraud In Light of This Disclosure Evidences A Bad Motive.**

Plaintiff's claims that SMG has committed fraud are, simply, not true. SMG disclosed Marsh's recommendation as to the request for the comprehensive liability insurance. *See* Ex. 3, Tr. 20:24-24:17; *see also* Ex. 7. Simply because Plaintiff was not happy with that decision, or merely did not expect that decision to occur, does not indicate fraud. In fact, this Court was actively involved in some of those disclosures and many of those discussions. *See* Ex. 3, generally. Further, SMG conveyed Marsh's reasoning to Plaintiff not only during telephone conferences before this Court, but also via e-mail. *See* Ex. 3, Tr. 23:1-24:17; *see also* Ex. 7. For whatever reason, Plaintiff has opted to seek an amendment in this matter via blatant misrepresentations to the Court. As such, Plaintiff's requested amendment on this issue is

clearly being made in bad faith and should not be permitted. Further, if any such amendment is allowed, the result will likely be a counterclaim and request for Rule 11 relief.

### E. Plaintiff's Request to Amend Its Complaint to Seek Permanent Injunctive Relief to Hold "Rallies" in the City In Perpetuity Must Be Denied As Futile

In its motion, Plaintiff admits that in light of the November 16, 2021 rally, its prior claims for injunctive relief are moot. *See* ECF 95, p. 2. However, it now seeks to amend its complaint to seek permanent injunctive relief to hold "rallies" in the City of Baltimore without any limitation on size, location, subject matter, security measures, contractual considerations, commercial viability, or time period. *See* ECF 95-2, p. 23. In light of the fact that no pleading in this case alleges any claim or danger of future harm necessitating a permanent boundless injunction giving Plaintiff carte blanche to do whatever it wishes on public (and seemingly private) property without any public or commercial considerations, any amendment to allow Plaintiff to seek such relief would be futile and should be denied.

### V. Conclusion

As detailed above, on November 16, 2021 the Plaintiffs held a rally at the MECU Pavilion without the presence of at least one security risk that concerned the City. A cursory review of Plaintiff's initial prayers for relief reveal that the majority have been realized rendering most of their claims moot. Plaintiff is now seeking to amend its complaint a second time to add a panoply of specious claims against SMG, a new claim of tortious interference against the City, and at least one claim that its counsel knows to be without merit making any amendment futile. For the above stated reasons, Plaintiff's request to amend should be denied.

Date:  December 14, 2021                           Respectfully submitted,

                                                   */s/ Renita L. Collins*
                                                   _____
                                                   RENITA L. COLLINS (#28637)
                                                   Chief Solicitor
                                                   HANNA MARIE C. SHEEHAN (#19531)
                                                   Chief Solicitor
                                                   Baltimore City Law Department
                                                   100 N. Holliday Street
                                                   City Hall Baltimore, MD 21202
                                                   Phone: 410-396-3930
                                                   Fax: 410-547-1025
                                                   Renita.Collins@baltimorecity.gov
                                                   Hanna.Sheehan@baltimorecity.gov
                                                   *Counsel for Defendants Mayor and City Council of Baltimore, City Solicitor James L. Shea, Mayor Brandon M. Scott, and SMG*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of December 2021, the Mayor and City Council of Baltimore, Mayor Brandon M. Scott, City Solicitor James L. Shea, and SMG's *Response in Opposition to Motion for Leave to Amend* was served via the Court's CM/ECF electronic filing system on Counsel of Record. A copy will be filed with the Clerk of the Court.

                                                   */s/ Renita L. Collins*
                                                   RENITA L. COLLINS (#28637)