## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>

ST. MICHAEL'S MEDIA, INC.,
2840 Hilton Road, Ferndale, MI 48220,

      Plaintiff,

v.

THE MAYOR AND CITY COUNCIL OF
BALTIMORE; JAMES SHEA, in his
personal and official capacities, c/o City Hall,
Room 101, 100 N. Holliday Street, Baltimore,
MD 21202; BRANDON M. SCOTT, in his
personal and official capacities, City Hall -
Room 250, 100 N. Holliday St, Baltimore,
MD 21202; and SMG, 300 Conshohocken
State Road, Suite 770, West Conshohocken,
PA,

      Defendants.

</td><td>

Case No. 1:21-cv-02337-ELH

**SECOND AMENDED
VERIFIED COMPLAINT**

**U.S. Const. Amend. I; 42 U.S.C. § 1983
Right of Free Speech
Right of Free Association
Right of Free Exercise
Establishment Clause
Breach of Contract
Promissory Estoppel
Tortious Interference with
Contractual Relations
Declaratory Judgment**

[JURY DEMANDED]

</td></tr>
</table>

For its Second Amended Verified Complaint ("Complaint") against Defendants, St. Michael's Media, Inc. hereby alleges and complains as follows:

### JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202, and 42 U.S.C. § 1983.

2.    Venue lies in this Court pursuant to 28 U.S.C. § 1391.

### THE PARTIES

3.    Plaintiff St. Michael's Media, Inc. ("St. Michael's") is a registered 501(c)(3) nonprofit organization formed under the laws of Michigan that publishes news stories about societal issues with a particular focus on the Catholic Church ("Church"). It sometimes dissents from the Church hierarchy, and is vocal about this dissent.

RANDAZZA | LEGAL GROUP

4.      Defendant The Mayor and City Council of Baltimore ("City of Baltimore" or the "City") is a municipal corporation duly incorporated and authorized under the laws of the State of Maryland pursuant to its charter.  The City of Baltimore is authorized under the laws of the State of Maryland to maintain its Department of Transportation, which acts as the City of Baltimore's agent for licensing, permitting, and approval of demonstrations such as rallies.

5.      Defendant James L. Shea is the City Solicitor for the City of Baltimore.  Shea is a public official for the City of Baltimore; he has the authority to approve or deny permits, contracts, and/or agreements for groups of individuals to conduct rallies within Baltimore, using authority granted to him by the Mayor of Baltimore and the City of Baltimore.  He exercised this authority in an unconstitutional manner, as explained in this Complaint.  Shea is sued in both his official and individual capacities.

6.      Defendant Brandon M. Scott is the Mayor of Baltimore.  Mayor Scott oversees the Baltimore Department of Transportation, appointed Defendant Shea to the position of City Solicitor, and has authority over Shea in carrying out Shea's duties as City Solicitor.  Mayor Scott is sued in both his official and individual capacities.

7.      Defendant SMG, a Pennsylvania general partnership that operates under the business name Royal Farms Arena ("SMG"), is the manager of a facility commonly known as the Pier Six Pavilion or MECU Pavilion, located on Pier Six of the Baltimore Inner Harbor, at 731 Eastern Ave, Baltimore, Maryland 21202 ("MECU Pavilion").  MECU Pavilion is owned by the City of Baltimore.  SMG is named as a Defendant as an independent entity and as a *de facto* government actor under 42 U.S.C. § 1983.

## STATEMENT OF RELEVANT FACTS

8.      St. Michael's publishes news articles and videos about current events of interest to Catholics.  St. Michael's often criticizes the current leadership of the Church, *inter alia* in regard to the perception of corruption in the Church and claims that the Church protects priests and other Church officials responsible for the sexual abuse of minors.

DocuSign Envelope ID: A55E71DC-5FC1-4B01-AF28-9BFE6FD4563C

9.      The United States Conference of Catholic Bishops (the "USCCB") was scheduled to conduct its Fall General Assembly during the period of November 15-18, 2021, at the Baltimore Waterfront Marriott Hotel in Baltimore, Maryland.  Numerous bishops and other high-ranking members of the Church attended this event.[1]

10.     On June 16, 2021, St. Michael's was preparing to hold a prayer rally at the MECU Pavilion in Baltimore, Maryland on November 16, 2021, titled the "Bishops: Enough is Enough Prayer Rally."  The MECU Pavilion is directly across from the Waterfront Marriott Hotel.  Starting on June 16, 2021, St. Michael's discussed entering into valid contractual relationships with SMG, the contracting agency hired by the City of Baltimore to manage events at the MECU Pavilion.

11.     St. Michael's chose this date and location for its rally specifically because it would take place at the same time and immediately adjacent to the USCCB Fall General Assembly.  The purpose of the rally was to engage in protected speech criticizing elements of the power structure of the Catholic Church in a situation where the speech would reach the Church's leadership.

12.     Plaintiff's rally was planned to, and did, include praying the Rosary, and thus was planned to be and was an explicitly religious demonstration.

13.     St. Michael's held this same kind of rally, at the exact same location and also coinciding with the USCCB's Fall General Assembly, in November 2018.  The City of Baltimore permitted St. Michael's to hold this rally.  No individuals or property was harmed or damaged during this rally.  It was entirely peaceful, lawful, and uneventful.

14.     Prior to August 5, 2021, SMG did not indicate there would be any problems with St. Michael's conducting the planned rally.  Relying on SMG's acceptance of the rally, St. Michael's paid a $3,000 deposit to SMG, which it accepted and deposited.  St. Michael's then spent several weeks communicating with SMG regarding the logistics of conducting the rally.  St. Michael's also began publicly promoting the rally, resulting in thousands of reservations and the booking of over a dozen speakers to discuss topics of interest to rally-goers.

---

[1] This action was filed prior to that time, and this Second Amended Complaint reflects the passage of time.

15.     Though St. Michael's and SMG had not yet signed a formal written agreement for use of the MECU Pavilion, SMG prepared and transmitted a draft contract for review and approval by St. Michael's on July 14, 2021.  (*See* draft contract, ECF 14-1.)  This agreement memorialized the terms to which St. Michael's and SMG had already agreed.

16.     Thus far, the Court has found that at least one provision of the contract was, in fact, agreed upon – the requirement that St. Michael's procure $2 million in insurance.  St. Michael's performed.  However, SMG went back on that agreement and thereafter sought between $10 million and $25 million in insurance.

17.     SMG reneged on its agreement to allow the event to go forward with $2 million in insurance as either an agent of the City, or on its own as a *de facto* state actor trying to impose a heckler's veto.

18.     St. Michael's prepared for the rally and incurred expenses on the understanding that the meeting of the minds between it and SMG would be memorialized in a forthcoming formal written agreement. St. Michael's reasonably understood that a contractual relationship existed between it and SMG.

19.     Prior to August 5, 2021, SMG sent multiple communications to St. Michael's that it approved of the rally going forward on November 16, 2021.  (*See* ECF 14-2, email correspondence between St. Michael's and SMG.)

20.     A contract was formed, despite the lack of final signatures on a written memorialization of that contract.

21.     The City claims to have the unilateral right, not bound by any objective factors or considerations, to cancel any event at the MECU Pavilion for any reason by ordering SMG to cancel contracts for events at the Pavilion.

22.     On or around July 19, 2021, the City exercised this claimed unilateral right and ordered SMG to cancel its contract with St. Michael's for use of the MECU Pavilion on November 16, 2021. (ECF 25-3, Declaration of Michael G. Huber, at ¶ 6.)

23.     Despite then-ongoing communications between SMG and St. Michael's, SMG waited weeks to tell St. Michael's this, as St. Michael's continued to operate to its detrimental reliance on the understanding that its rally was set to go forward.

24.     Finally, on August 5, 2021, SMG notified St. Michael's that the contract for the rally to be held at MECU Pavilion was being unilaterally cancelled. It provided no explanation for this development and told St. Michael's to contact Defendant Shea for additional information.

25.     The City of Baltimore, as the owner of the property, forced SMG to cancel the event and acted in concert with SMG to cancel the event.  (*See* ECF 14-3, email from Teresa Waters to James Shea dated August 4, 2021.)

26.     On August 6, 2021, St. Michael's CEO, Michael Voris, spoke with Shea regarding the cancellation of the November 16 rally.  Shea told Mr. Voris that his office had received reports that St. Michael's had "ties to the January 6 [2021] riot" at the Capitol building in Washington, D.C.  Mr. Voris immediately told Shea that this was categorically false and asked for the source of any such reports.  Shea responded that he had not found any such reports himself, but that unspecified "people" had told him such reports were widely available on the internet.

27.     Such reports are not widely available.  In fact, no one (aside from the City and SMG) has ever accused St. Michael's of being involved in any capacity with the events of January 6 or anything of the sort.  No one could reasonably come to the conclusion that such reports existed, and no one could have told Shea this with even a scintilla of credibility.

28.     After Mr. Voris explained to Shea how this allegation was false, Shea claimed that his office, after conducting a risk assessment, determined that St. Michael's posed a "risk of violence," including potential property damage, and a threat to safety at the MECU Pavilion while the USCCB's Fall General Assembly was going on.  He then explained that he had instructed SMG to cancel its contract with St. Michael's.  He also mentioned that the proximity of the MECU Pavilion to high-scale properties in Maryland was a factor in deciding to cancel the rally.

29.     Mr. Voris asked Shea for any evidence of reports about St. Michael's involvement in the events of January 6.  Shea refused to provide any such evidence.

30.     Mr. Voris told Shea that St. Michael's Media had safely held a fully peaceful rally for the same purpose and in the same circumstances in 2018, to which Shea only responded "well, a lot has changed in three years."

31.     During this call, Shea made no mention of any objections the City had to any of the speakers planned to speak at the rally.

32.     On information and belief, Shea has ties to the USCCB.  Mr. Voris asked Shea during this call whether anyone from or related to the USCCB had asked him to cancel the November 16 rally.  Shea responded "I can neither confirm nor deny that."

33.     Shea did not offer any accommodations to St. Michael's Media.

34.     Shea stated during this call that he had the authority to decide to cancel St. Michael's contract with SMG, and that he did in fact exercise this authority to cancel the contract.

35.     After this conversation, St. Michael's continued to attempt to resolve its dispute with Defendants informally, concluding with a demand letter it sent on August 27, 2021, giving Defendants until September 3, 2021, to allow the rally to go forward.

36.     Defendants ignored this demand, and St. Michael's was left with no choice but to seek redress from this Court.

37.     Shea provided no prior notice of his decision to cancel St. Michael's contract.

38.     There were no official means of challenging Shea's decision to cancel St. Michael's contract, nor did Shea provide any informal means for doing so.

39.     Mr. Voris asked Shea what criteria he used in deciding to cancel St. Michael's contract. Shea refused to provide this information. Presumably, he will be more forthcoming during his deposition.

40.     On information and belief, Shea did not, in fact, engage in any kind of investigative or fact-finding process before deciding to cancel St. Michael's contract.

41.     No one credibly told Shea that St. Michael's planned rally posed any risk of violence to anyone or anything, and his office did not find any such risk of violence.

42.     On information and belief, Shea was told by USCCB members that the content of speech during St. Michael's rally would be uncomfortable or offensive for the attendants of its Fall General Assembly to hear.

43.     Shea unilaterally canceled St. Michael's contract with SMG because the USCCB told him to, because the City disagreed with St. Michael's viewpoint, or for other unconstitutional reasons.

44.     During the August 6, 2021, phone call, Shea told Mr. Voris that Shea controlled the MECU Pavilion, it was owned by the City of Baltimore, and he "was not going to approve the permit."

45.     Given that a permit was not required to hold an event such as the one contemplated by St. Michael's, Shea clearly meant that he was going to reject the agreement that St. Michael's and SMG had reached for the rally.

46.     After this lawsuit was initiated, the City took the position that it ordered SMG to cancel Plaintiff's rally because it feared that two of the planned speakers, Steve Bannon and Milo Yiannopoulos, were so controversial that they would draw violent counter-protesters.  The City had no factual basis for this conclusion.

47.     Though SMG is a private entity, the licensing of the MECU Pavilion is ultimately controlled by the City of Baltimore, which owns the MECU Pavilion.

48.     SMG acts as a party to whom Baltimore has delegated its constitutional authority.

49.     SMG acted jointly with the City to deprive St. Michael's of its First Amendment rights.

50.     SMG acted under the control of Baltimore as an agent to deprive St. Michael's of its First Amendment rights.

51.     SMG acted in the capacity of a "government actor."

52.     SMG refused to fulfill its obligations to St. Michael's because the Government Defendants insisted that it cancel the contract.

53.     To the extent a contract was not formed between St. Michael's and SMG, this is solely because the Government Defendants unconstitutionally interfered with these contractual relationships.

54.     After the Court enjoined the City from interfering with preparations for Plaintiff's rally, SMG sent a finalized contract to St. Michael's on September 16, 2021.  St. Michael's made no alterations to the contract, signed it that day, and sent a signed version of the contract to SMG. Despite this clear offer and acceptance of all contractual terms, SMG continued to refuse to sign or perform the agreement, claiming that the City had once again forced it not to sign.  (ECF 19-2 & 31-2.)

55.     After the Court entered a preliminary injunction on October 12, 2021, against the City and everyone acting in concert with it to stop interfering with preparations for the rally, SMG continued to refuse to sign or perform its agreement with St. Michael's, again claiming the City was instructing it not to sign. (ECF 48 & 48-1.)

56.     SMG then took the position, without any possible factual basis, that upon reviewing the Court's preliminary injunction order, which made no findings that violence was likely to result from Plaintiff's rally, that St. Michael's needed to procure an insurance policy of $25 million, or, at a minimum, $10 million, rather than the $2 million upon which the SMG and St. Michael's had already agreed, as the Court recognized in its ruling.

57.     On information and belief, neither SMG nor the City has ever previously sought to have a licensee of the MECU Pavilion provide $10 million in insurance coverage (let alone $25 million) for an event to be held at that facility.

58.     Defendants had not obtained any information regarding the purported dangers of Plaintiff's rally since July 19, 2021, that would make the rally appear dangerous.

59.     Notably, SMG's demand for additional insurance and security concerns appear to have been pretextual.  NRG Stadium in Houston, Texas, which is managed by SMG's parent company, ASM Global, was in the news as it hosted the 2021 Astroworld music festival, where ten concertgoers tragically lost their lives in a crowd crush incident.

60.     Not only did SMG's parent have no qualms about hosting that festival, it actually used footage of chaos at prior Astroworld events to promote this year's Astroworld music festivals. Moreover, SMG's parent was aware that there had been prior trampling and other crowd injuries at prior Astroworld events when it agreed to host this year's.

61.     Meanwhile, SMG acted in concert with the City to frustrate the Prayer Rally, using the pretext of security and safety.

62.     On information and belief, SMG and its parent company were more focused on preventing the Prayer Rally than it was on security at the Astroworld event, thus demonstrating that its focus on security at the Prayer Rally was a mere pretext for viewpoint and/or religious discrimination.

63.     The entire purpose of the November 16 rally was to communicate the ideas of St. Michael's members and attending speakers to the USCCB in a format and in a venue that they could not ignore.  Conducting the rally at a different time or in a different place would have completely neutered the expressive elements of the rally – presumably, this is the reason that the lawful assembly was not allowed without the intervention of this Court.

64.     Similarly, praying the Rosary, a traditional Catholic series of prayers, was planned to be, and actually was significant at the rally because of the proximity to the USCCB, as it expressed the rally-goers' refutation of the USCCB claim to legitimacy as a religious institution. Conducting the rally at a different time or in a different place would have neutered the religious significance of the rally.

65.     St. Michael's was harmed by the Defendants' unconstitutional actions.

66.     The uncertainty caused by the Defendants' fighting to prevent the Prayer Rally, until less than two weeks remained before the event, caused many people who would have attended to cancel their plans, thus diminishing the attendance at and effectiveness of the rally.

67.     St. Michael's was not able to conduct its rally without the emergency injunctive relief to restore the *status quo ante* granted by the Court.

68.     Given that events were not finalized before September 20, 2021, St. Michael's had insufficient time to make full arrangements for the rally it planned, and even though injunctive relief was granted on an emergency basis, St. Michael's has suffered damages and irreparable harm.

69.     Thousands of rally-goers also purchased plane tickets and made hotel reservations in anticipation of the rally, many of which expenses could not be recouped or refunded.

70.     Due to the Court's compulsion, the Prayer Rally went forward.

71.     There were no negative incidents at the Prayer Rally.

72.     A few counter-protesters did come to the Prayer Rally, and they were peaceful, expressed their views, and left.

73.     Some of the counter-protesters were representatives of The Satanic Temple, an organization that is diametrically opposed to many of St. Michael's views.

74.     Nevertheless, the Satanists filed an amicus brief in the Fourth Circuit, in support of St. Michael's *right* to hold the Prayer Rally.

75.     The Satanists, having fought for St. Michael's right to hold the rally, then exercised their First Amendment rights to protest against St. Michael's during the rally.  However, they did so just as members of "Antifa" did – peacefully.

76.     Antifa members and Satanists said their piece, but never tried to impede Prayer Rally attendees from entering or leaving the Prayer Rally.

77.     By all measures, Antifa and Satanists showed more reverence for St. Michael's rights than the Defendants.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Right of Free Speech – U.S. Const. Amend. I; 42 U.S.C. § 1983
### *(as to all Defendants)*

78.     Plaintiff incorporates each preceding paragraphs as though set forth fully herein.

79.     Plaintiff's November 16, 2021 Prayer Rally contained and was planned to contain expressive speech protected under the First Amendment to the U.S. Constitution.  The rally was designed to allow St. Michael's, its speakers, and rally-goers to engage in discussion on matters of political and religious significance and on issues of public concern.

80.     The City Defendants interfered with St. Michael's right to free speech by commanding SMG to cancel its contractual relationship with St. Michael's regarding the rally at the MECU Pavilion and requiring St. Michael's to sue them and to defend their victory at the trial level and on appeal – which they did successfully.

81.     St. Michael's had no other option for conducting a rally at a venue as close to the USCCB Fall General Assembly as the MECU Pavilion.

82.     The expressive purpose of the rally would have been severely diminished if it did not take place at the MECU Pavilion during the USCCB Fall General Assembly.

83.     Defendants' cancellation of St. Michael's rally was not done for a content-neutral or viewpoint-neutral reason.  No one raised any safety concerns about St. Michael's to them, nor did they have any factual basis whatsoever to believe the rally would pose a risk of violence to anyone or anything.

84.     Defendants canceled St. Michael's rally specifically because they disapproved of the content and viewpoint of the speech that was expected to occur at the rally.

85.     There was no state interest, much less a compelling one, served by canceling St. Michael's rally.

86.     Defendants did not narrowly tailor their restriction on St. Michael's speech, instead outright refusing to allow it to speak at the MECU Pavilion during the USCCB Fall General Assembly.

87.     Defendants did not provide any adequate alternative channels of communication for St. Michael's, as the entire purpose of the rally would have been negated if it had been moved, for political reasons, out of view and earshot of the USCCB Fall General Assembly.

88.     Defendants had actual knowledge that their actions were unconstitutional, as evidenced by Shea's lying about the purported justifications for canceling the rally.  Further, Shea, a graduate of Phillips Andover, Princeton University, and University of Virginia Law School and former Chairman of Venable LLP, a large national law firm of 850 professionals in 10 offices, is a highly educated and experienced attorney, not some uneducated layperson who may not understand the First Amendment.

89.     Defendants' actions were obviously unconstitutional, such that no reasonable person could believe that they were Constitutional; and no lawyer would be so void of knowledge to believe otherwise.

90.     Defendants sued in their individual capacities are not entitled to qualified immunity because a reasonable person would have known that these Defendants' actions violated a constitutional right.

91.     Defendants had authority as government officials to order the cancellation of St. Michael's Media's contract with SMG, and they actually exercised this authority.

92.     This authority comes, ostensibly, from a contract between SMG and the City.  This term of the contract is unconstitutional on its face, and it must be struck down lest the City invoke it again.

93.     This contract provides the Defendants with unfettered discretion to deny use of the MECU Pavilion on an unconstitutional basis, and it must be struck down.

94.     The City delegated management of its MECU Pavilion, which is public property, to private entity SMG.  The City also delegated the state act of censorship to SMG by permitting SMG to cancel expressive events at the MECU Pavilion for viewpoint-based reasons.

95.     The City compelled SMG to effectuate its censorship of St. Michael's by requiring SMG to cancel its contract with St. Michael's for the November 16, 2021, rally.

96.     The City and SMG worked jointly to engage in viewpoint-based censorship of St. Michael's.  The City ordered SMG to cancel its contract with St. Michael's for use of the MECU Pavilion for viewpoint-based reasons, which SMG did.

97.     SMG then refused to sign or perform its contract with St. Michael's as the glove over the hand of the City, despite the Court's multiple injunctions preventing the City from interfering with Plaintiff's rally.

98.     Then SMG worked to effectuate the City's censorship of St. Michael's by reneging on previously agreed-to contractual terms and requiring St. Michael's to acquire a ludicrously large insurance policy with no possible factual justification, for the sole purpose of manufacturing an excuse not to allow Plaintiff's rally to go forward.

99.     SMG is a state actor and is equally liable for the constitutional violations St. Michael's has suffered.

100.     Defendants' actions, under color of state law, violated St. Michael's right to free speech under the First Amendment to the U.S. Constitution, and have caused St. Michael's significant damages, including attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**Right of Free Exercise of Religion – U.S. Const. Amend. I; 42 U.S.C. § 1983**
***(as to all Defendants )***

101.     Plaintiff incorporates the paragraphs as though set forth fully herein.

102.     Plaintiff's November 16, 2021, rally was planned to be and was religious expression led by St. Michael's and performed by rally-goers.

103.     Defendants directly interfered with St. Michael's right to conduct this rally by commanding SMG to cancel its contractual relationships with St. Michael's regarding the rally at the MECU Pavilion.

104.     St. Michael's did not have another option for conducting a rally at a venue as close to the USCCB Fall General Assembly as the MECU Pavilion.

105.     The religious purpose of the rally would have been diminished if it had not taken place at the MECU Pavilion during the USCCB Fall General Assembly.

106.     Defendants' cancellation of St. Michael's rally was not done for any legitimate reason and substantially burdened the practice of St. Michael's religion.  No one raised any safety

DocuSign Envelope ID: A55E71DC-5FC1-4B01-AF28-9BFE6FD4563C

concerns about St. Michael's to Defendants, nor did they have any factual basis whatsoever to believe the rally would pose a risk of violence to anyone or anything.

107.   Defendants canceled St. Michael's rally specifically because they disapproved of the exercise of religious beliefs that was expected to occur at the rally.

108.   Defendants had actual knowledge that their actions were unconstitutional, as evidenced by Shea's lying about the purported justifications for canceling the rally.

109.   Defendants' actions were obviously unconstitutional, such that no reasonable person could have believed that they passed constitutional muster.

110.   Defendants sued in their individual capacities are not entitled to qualified immunity because a reasonable person would have known that these Defendants' actions violated a constitutional right.

111.   Defendants had authority as government officials to order the cancellation of St. Michael's contract with SMG, and they actually exercised this authority.

112.   The City has delegated management of the MECU Pavilion, which is public property, to private entity SMG.  The City has also delegated the state act of censorship to SMG by permitting SMG to cancel expressive events at the MECU Pavilion for illegitimate reasons.

113.   The City compelled SMG to effectuate its censorship of St. Michael's by requiring it to cancel its contract with St. Michael's for the November 16, 2021, rally.

114.   The City and SMG worked jointly to engage in censorship of St. Michael's.  The City ordered SMG to cancel, for illegitimate reasons, its contract with St. Michael's for use of the MECU Pavilion which SMG did.  SMG then refused to sign or perform its contract with St. Michael's because it wanted to maintain its relationship with the City, despite the Court's multiple injunctions preventing the City from interfering with Plaintiff's rally.  And then SMG worked to effectuate the City's censorship of St. Michael's by reneging on previously agreed-to contractual terms and requiring St. Michael's to acquire an obscenely large insurance policy with no possible factual justification, for the sole purpose of manufacturing an excuse not to allow St. Michael's rally to go forward.

115.    SMG is a state actor and is equally liable for the constitutional violations St. Michael's has suffered.

116.    Defendants' cancellation of St. Michael's rally, under color of state law, violated St. Michael's rights under the First Amendment to the U.S. Constitution, and caused St. Michael's significant damages, including attorneys' fees.

### THIRD CLAIM FOR RELIEF
### Establishment of Religion – U.S. Const. Amend. I; 42 U.S.C. § 1983
### *(as to all Defendants)*

117.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

118.    Plaintiff's November 16, 2021, rally was planned to, and did, contain religious expression led by St. Michael's and performed by rally-goers.

119.    St. Michael's Media is a vocal critic of what it perceives as politicization of the Catholic Church by the USCCB. It disagrees with, and criticizes, a number of the USCCB's positions on religious doctrine and morality, as well as the Catholic Church's covering up of the sexual abuse committed by its priests.

120.    Defendants have clearly and explicitly chosen to favor the USCCB and its adherence to politicized Catholic doctrine over St. Michael's more traditional view of Catholic doctrine.

121.    Defendants, by canceling St. Michael's rally, suppressed St. Michael's religious expression, while allowing USCCB's Fall General Assembly to go forward unhindered.

122.    Defendants' cancellation of St. Michael's rally was not done for any legitimate reason.  No one raised any safety concerns about St. Michael's to them, nor did they have any factual basis whatsoever to believe the rally would pose a risk of violence to anyone or anything.

123.    The only reason Defendants allowed this to happen is that they preferred the USCCB and its views over those of St. Michael's.

124.    Defendants had actual knowledge that their actions were unconstitutional, as evidenced by Shea's lying about the purported justifications for canceling the rally.

125.    Defendants' actions were obviously unconstitutional, such that no reasonable person could believe that they passed constitutional muster.

126.    Defendants sued in their individual capacities are not entitled to qualified immunity because a reasonable person would have known that these Defendants' actions violated a constitutional right.

127.    Defendants had authority as government officials to order the cancellation of St. Michael's contract with SMG, and they actually exercised this authority.

128.    The City has delegated management of the MECU Pavilion, which is public property, to private entity SMG.  The City has also delegated the state act of censorship to SMG by permitting SMG to cancel expressive events at the MECU Pavilion for illegitimate reasons.

129.    The City compelled SMG to effectuate its censorship of St. Michael's by requiring it to cancel its contract with St. Michael's for the November 16, 2021 rally.

130.    The City and SMG worked jointly to engage in censorship of St. Michael's.  The City ordered SMG to cancel, for illegitimate reasons, its contract with St. Michael's for use of the MECU Pavilion which SMG did.  SMG then refused to sign or perform its contract with St. Michael's because it wanted to maintain its relationship with the City, despite the Court's multiple injunctions preventing the City from interfering with Plaintiff's rally.  And then SMG worked to effectuate the City's censorship of St. Michael's by reneging on previously agreed-to contractual terms and requiring St. Michael's to acquire an obscenely large insurance policy with no possible factual justification, for the sole purpose of manufacturing an excuse not to allow Plaintiff's rally to go forward.

131.    SMG is a state actor and is equally liable for the constitutional violations St. Michael's has suffered.

132.    Defendants' cancellation of St. Michael's rally, under color of state law, violated St. Michael's rights under the First Amendment to the U.S. Constitution, and caused St. Michael's significant damages, including attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**Right of Assembly – U.S. Const. Amend. I; 42 U.S.C. § 1983**
*(as to all Defendants)*

133.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

134.    Plaintiff's November 16, 2021, rally was planned to and did contain expressive speech protected under the First Amendment to the U.S. Constitution.  The rally was designed to allow St. Michael's, its speakers, and rally-goers to engage in discussion on matters of political and religious significance and on issues of public concern.

135.    St. Michael's and its rally-goers have an independent right under the First Amendment to peaceably assemble for this purpose, and their assembly further augments the effectiveness of the exercise of their free speech and free exercise rights.

136.    Defendants directly interfered with St. Michael's right to conduct this rally by commanding SMG to cancel its contractual relationships with St. Michael's regarding the rally at the MECU Pavilion.

137.    St. Michael's did not have another option for conducting a rally at a venue as close to the USCCB Fall General Assembly as the MECU Pavilion.

138.    The expressive purpose of the rally would have been severely diminished if it did not take place at the MECU Pavilion during the USCCB Fall General Assembly.

139.    Defendants' cancellation of St. Michael's rally was not done for any content-neutral or viewpoint-neutral reason. No one raised any safety concerns about St. Michael's to them, nor did they have any factual basis whatsoever to believe the rally would pose a risk of violence to anyone or anything.

140.    Defendants canceled St. Michael's rally specifically because they disapproved of the content and viewpoint of the speech that was expected to occur at the rally.

141.    There was no state interest, much less a compelling one, served by canceling St. Michael's rally.

142.     Defendants did not narrowly tailor their restriction on St. Michael's speech, instead outright refusing to allow it to speak at the MECU Pavilion during the USCCB Fall General Assembly.

143.     Defendants did not provide any adequate alternative channels of communication for St. Michael's, as the entire purpose of the rally would have been negated if it had not occurred in close proximity to the USCCB Fall General Assembly.

144.     Defendants had actual knowledge that their actions were unconstitutional, as evidenced by Shea's lying about the purported justifications for canceling the rally.

145.     Defendants' actions were obviously unconstitutional, such that no reasonable person could have believed that they passed constitutional muster.

146.     Defendants sued in their individual capacities are not entitled to qualified immunity because a reasonable person would have known that these Defendants' actions violated a constitutional right.

147.     Defendants had authority as government officials to order the cancellation of St. Michael's contract with SMG, and they actually exercised this authority.

148.     The City has delegated management of the MECU Pavilion, which is public property, to private entity SMG. The City has also delegated the state act of censorship to SMG by permitting SMG to cancel expressive events at the MECU Pavilion for viewpoint-based reasons.

149.     The City has compelled SMG to effectuate its censorship of St. Michael's by requiring it to cancel its contract with St. Michael's for the November 16, 2021 rally.

150.     The City and SMG worked jointly to engage in viewpoint-based censorship of St. Michael's.  The City ordered SMG to cancel its contract with St. Michael's for use of the MECU Pavilion for viewpoint-based reasons, which SMG did.  SMG then refused to sign or perform its contract with St. Michael's because it wanted to maintain its relationship with the City, despite the Court's multiple injunctions preventing the City from interfering with Plaintiff's rally. And then SMG worked to effectuate the City's censorship of St. Michael's by reneging on previously

agreed-to contractual terms and requiring St. Michael's to acquire an obscenely large insurance policy with no possible factual justification, for the sole purpose of manufacturing an excuse not to allow Plaintiff's rally to go forward.

151.    SMG is a state actor and is equally liable for the constitutional violations St. Michael's has suffered.

152.    Defendants' cancellation of St. Michael's rally, under color of state law, violated St. Michael's right to free speech under the First Amendment to the U.S. Constitution, and has caused St. Michael's significant damages, including attorneys' fees.

### FIFTH CLAIM FOR RELIEF
### Breach of Contract (as to Defendant SMG only)

153.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

154.    St. Michael's entered into a valid contract with SMG for use of the MECU Pavilion for a rally on November 16, 2021.

155.    St. Michael's and SMG had a meeting of the minds that St. Michael's would be allowed to use this venue on this date and for this purpose.

156.    Over the course of several weeks from June 16, 2021, to August 5, 2021, SMG made numerous representations to St. Michael's that it would be allowed to use the MECU Pavilion on this date and for this purpose.

157.    In reliance on these representations, St. Michael's expended significant time, money, and resources preparing to hold its November 16, 2021, rally at the MECU Pavilion, including paying a $3,000 deposit to SMG, which SMG accepted.

158.    Prior to August 5, 2021, SMG sent a communication to St. Michael's that the rally **was scheduled** for November 16, 2021. (*See* ECF 14-2.)

159.    SMG and St. Michael's had a meeting of the minds with respect to the material terms of the license agreement for St. Michael's use of the MECU Pavilion.

160.    St. Michael's and SMG were therefore parties to a contract for use of the MECU Pavilion for the rally on November 16, 2021.

DocuSign Envelope ID: A55E71DC-5FC1-4B01-AF28-9BFE6FD4563C

161.    On August 5, 2021, SMG abruptly informed St. Michael's that it would not be allowed to hold its rally at the MECU Pavilion.

162.    SMG refused to fulfill any of its contractual obligations to St. Michael's from August 5, 2021 forward.

163.    SMG continued to refuse to honor any of its contractual obligations despite sending a final version of the contract to St. Michael's on September 16, 2021, which St. Michael's signed without any changes, and which St. Michael's sent a signed version back to SMG the same day.

164.    In so doing, SMG materially breached the contract between it and St. Michael's.

165.    At the time of SMG's breach, St. Michael's had performed all conditions precedent and fulfilled all of its obligations under the contract.

166.    The City of Baltimore unconstitutionally intervened and exercised its right to rescind SMG's contract with St. Michael's or to block the contract. (*See* ECF 14-3.)

167.    SMG was a willing participant in the City's scheme to censor St. Michael's, and would not voluntarily sign or perform an agreement for use of the MECU Pavilion.

168.    When SMG finally was compelled to let the Prayer Rally go forward, it then tried to derail it with a ridiculous demand for $10 million to $25 million in insurance, despite previously agreeing that only $2 million in insurance was required.

169.    This requirement put St. Michael's in an impossible situation – seek to obtain and then pay for an absurdly large insurance policy or forego its First Amendment rights.

170.    St. Michael's did, indeed shop for such insurance, and obtained a policy far in excess of the $2 million to which SMG had agreed.

171.    The mere act of shopping for such large policies made St. Michael's a risk, and caused its general carrier to drop it, all because of the Defendants' actions.

172.    St. Michael's has suffered considerable damages as a result of SMG's breach of its contract, including added expenses of trying to coordinate the logistics of the rally on very short notice, increased travel expenses, a reduction in the size of the event, and reputational harm.

## SIXTH CLAIM FOR RELIEF
### Promissory Estoppel *(as to Defendant SMG only)*

173.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

174.    SMG made a clear and definite promise that St. Michael's would be allowed to use the MECU Pavilion for a prayer rally on November 16, 2021 on the terms agreed upon by the parties.

175.    SMG reasonably expected that its promise would induce action or forbearance by St. Michael's.

176.    SMG's promise induced actual and reasonable action or forbearance by St. Michael's.

177.    A resulting detriment can only be avoided by the enforcement of SMG's promise.

178.    SMG was a willing participant in the City's scheme to censor St. Michael's.

179.    St. Michael's acted on the reasonable understanding that a contract had been formed with SMG to its detrimental reliance, including by making arrangements with third-party vendors and acquiring insurance that SMG required.

180.    SMG asked for these instances of performance from St. Michael's and had actual knowledge of Plaintiff's detrimental reliance. SMG was estopped from asserting that no contract existed between it and St. Michael's, and was certainly estopped from requiring more than $2 million in insurance.

## SEVENTH CLAIM FOR RELIEF
### Tortious Interference with Contractual Relations *(as to the City Defendants)*

181.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

182.    As of mid-July 2021, a contract existed between SMG and St. Michael's for St. Michael's use of the MECU Pavilion for the prayer rally.

183.    The City Defendants knew of the existence of this contract.

184.     The City Defendants engaged in intentional and improper conduct to induce SMG to breach its contract with St. Michael's or otherwise render it impossible for SMG to perform under the contract.

185.     Thereafter, SMG breached the contract.

186.     As a result, St. Michael's suffered damages by SMG's non-performance of the contract.

### EIGHTH CLAIM FOR RELIEF
### Declaratory Judgment *(as to all Defendants)*

187.     Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

188.     An actual case of controversy exists between the parties to this action with respect to Defendants' infringement of St. Michael's constitutional rights.

189.     Defendants violated St. Michael's constitutional rights when it sought to cancel St. Michael's prayer rally and prevent it from going forward.

190.     St. Michael's seeks a declaration that Defendants' actions violated St. Michael's First Amendment rights as described above.

191.     A declaration will clarify the rights of the parties as to this dispute between them and lay a foundation for future rallies by Plaintiff at the Pavilion.

### <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff St. Michael's Media requests that judgment be entered in its favor and against Defendants as follows:

A.     Declaratory relief consistent with the injunction, including specifically, declaratory relief to the effect that Defendants' decision to cancel St. Michael's contracts regarding its planned November 16, 2021, rally was unconstitutional;

B.     Damages for breach of contract and promissory estoppel against all Defendants;

C.     Compensatory damages in an amount to be determined at trial;

D.      Punitive damages in an amount to be determined at trial;

E.      Attorneys' fees and expenses pursuant to 42 U.S.C. § 1988;

F.      Ordinary taxable costs of suit; and,

G.      Any further relief as the Court deems just and appropriate.


Dated: January 28, 2022.                   Respectfully Submitted,

                                           /s/ Marc J. Randazza
                                           Marc J. Randazza (*pro hac vice*)
                                           RANDAZZA LEGAL GROUP, PLLC
                                           2764 Lake Sahara Drive, Suite 109
                                           Las Vegas, Nevada 89117
                                           Tel: (702) 420-2001
                                           Email: ecf@randazza.com

                                           David S. Wachen (Bar No. 12790)
                                           WACHEN LLC
                                           11605 Montague Court
                                           Potomac, MD 20854
                                           (o) (240) 292-9121
                                           (f) (301) 259-3846
                                           david@wachenlaw.com

                                           Attorneys for Plaintiff,
                                           St. Michael's Media, Inc.

DocuSign Envelope ID: A55E71DC-5FC1-4B01-AF28-9BFE6FD4563C

## <u>VERIFICATION OF COMPLAINT</u>

I, Michael Voris, am the Chief Executive Officer of Plaintiff St. Michael's Media, Inc. I have reviewed the foregoing allegations in this Verified Second Amended Complaint, and on behalf of St. Michael's Media, I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Executed on: 1/28/2022 _____.

DocuSigned by:

*Michael Voris*

DDD10EBB604E446...

Michael Voris

RANDAZZA | LEGAL GROUP

Case No. 1:21-cv-02337-ELH

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 28th day of January, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Marc J. Randazza
Marc J. Randazza

RANDAZZA | LEGAL GROUP