IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ST. MICHAEL'S MEDIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE MAYOR AND CITY COUNCIL OF BALTIMORE, *et al.*, <br><br> Defendants. | Case No. 1:21-cv-02337-ELH <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STAY CASE AND REFER TO MEDIATION** |

Defendants argue, in opposition to Plaintiff's Motion to Stay, "*The Defendants would be required to enter a potentially protracted negotiation without the benefit of any discovery about the foundation, viability, or veracity of the Plaintiff's claims*" and that such a negotiation would be an "*exercise in futility that will only further serve to increase the length of this matter and, in turn, the attorney's fee bill of the Plaintiff.*" (Dkt. No. 118 at 3-4.)

A mediation, by its very nature, is anything but "protracted" and a skilled mediator should be able to get the parties to focus on the heart of the issues in short order—likely in a single day. This case is at this point relatively simple. Plaintiff has already largely prevailed on its keystone claims. However, it does have other claims that could benefit from discovery, but it is willing to negotiate to resolve this case now. However, the City has refused to even so much as discuss a resolution. Moreover, Defendants' argument about the timing of Plaintiff's Motion is completely disingenuous as it ignores Plaintiff's numerous entreaties to Defendants throughout this litigation (and beforehand) to try to resolve this dispute and repeated suggestions to defense counsel that the parties mediate this matter, including in response to the Court's suggestion of mediation last fall. Immediately after the Court's suggestion, the Plaintiff tried – the City was not interested. Plaintiff

then made overtures on September 16, 2021, September 28, 2021, November 5, 2021, November 22, 2021, December 1, 2021, and yet again on February 1, 2022.  To date, the City Defendants have refused to even talk about settlement or mediation.  Nevertheless, the City takes the position that the Plaintiff somehow sandbagged the Defendants with this timing.

Certainly, Plaintiff has a right to engage in discovery to answer many of the questions that remain unanswered.  Why Defendants made certain decisions, who was involved, what the contract between Baltimore and SMG (which Defendants thus far have refused to produce) actually says, etc. will most likely support their not-yet-adjudicated portions of the case. Depending on what information comes out, the information could perhaps even lead to additional claims.  However, Plaintiff is willing to engage in mediation before engaging in this time-consuming and expensive process.

Defendants argue that a mediation at this time would require Defendants to negotiate "without the benefit of any discovery about the foundation, viability, or veracity of the Plaintiff's claims." (Defs. Opp. at 3.) In making that statement, Defendants ignore the two-day evidentiary hearing on the merits of Plaintiff's claims, the voluminous briefing and factual and legal submissions from Plaintiff, this Court's ruling that Plaintiff would likely succeed on the merits of its claims, and the Fourth Circuit's summary affirmance of this Court's ruling. Defendants also argue that they need discovery to flesh out the amount of damages that St. Michael's will claim. The damages in this case exist, but are likely to be a small portion of what Plaintiff expects out of Defendants.  This is, at its heart, a claim under 28 U.S.C. § 1983.  Having prevailed in vindicating its First Amendment rights, Plaintiff is entitled to seek its attorneys' fees to achieve that result. *See Daimler Trust v. Prestige Annapolis, LLC*, No. ELH-16-544, 2016 U.S. Dist. LEXIS 75014, *20-21 (D. Md. June 7, 2016) (Hollander, J.). Plaintiff has reported to Defendants on a quarterly basis the amount of its attorneys' fees, which are considerable, that have been expended on this litigation thus far. That number will only increase as this litigation continues, especially if Defendants desire protracted discovery.

Defendants have accused Plaintiff of engaging in unnecessary actions in this case, to "run up the bill." (Dkt. No. 102 at 7 (claiming that "Plaintiff now seeks to extend this litigation and potentially gain the benefit from an increased claim for 28 U.S.C. § 1988) and Dkt. No. 118 at 3-4 (stating that "[t]o force the parties to enter into a mediation . . . would be an exercise in futility that will only further serve to increase the length of this matter and, in turn, the attorney's fees bill of the Plaintiff."). Plaintiff believes that a mediation is likely to succeed, or at least is worth a try. If Defendants believe that any figure for damages raised at mediation is unsupported, and they wish to continue fighting, they have every right to refuse to settle until they do get whatever discovery they think may help their claim that the damages are not as much as claimed.

Plaintiff is willing to mediate without that advantage. The mediation will most likely focus almost entirely on the attorneys' fees expended to date. Defendants argue that they cannot mediate until the parties serve discovery on each other, and then (given the experience in the case so far) without a doubt, have multiple discovery disputes that continue to run up the tab. Meanwhile, Plaintiff first sought a 26(f) conference and the commencement of discovery on November 5, 2021. The City was not interested in that, seeking to delay it. Now, apparently, they have had a change of heart.

At this point, Plaintiff is willing to engage in alternate dispute resolution as a matter of judicial and party economy. The City may not be as conscious of the costs and fees that would be expended in protracted litigation – they are playing with the taxpayers' money. But, St. Michael's is a small organization, for whom even the costs to date (for example, the bond fee) have been crippling. If Plaintiff ultimately succeeds on its fee motion, this too will be taxpayer money. Why does the City insist on spending five to six figures on discovery, when Plaintiff is willing to discuss peace at this point?

This Court has the inherent power to manage its docket under Rule 16 of the Federal Rules of Civil Procedure. In doing so, Rule 1 of the Federal Rules of Civil Procedure states that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." As the

RANDAZZA | LEGAL GROUP

now-retired, but greatly respected Magistrate Judge Peggy Leen said it best, "*[a]t the end of 2015 the chief justice [John Roberts] devoted his year-end statement on the judiciary almost entirely on the need to rein in expensive discovery, urging the lower courts to do that and to proactively manage cases to accomplish the goal of Rule 1 and to avoid unnecessary and expensive discovery which is increasingly precluding ordinary people from being able to have their cases heard in federal court.*"  (*See* transcript of hearing on motion to stay in *Abbey Dental Center v. Consumer Opinion LLC*, No. 2:15-cv-02069-GMN-PAL dated March 24, 2017, attached as **Exhibit 1**, at 20; *see also* 2015 Year-End Report on the Federal Judiciary, attached as **Exhibit 2**.)

In that report, Chief Justice Roberts wrote:

> *The 2015 civil rules amendments are a major stride toward a better federal court system. But they will achieve the goal of Rule 1—"the just, speedy, and inexpensive determination of every action and proceeding"— only if the entire legal community, including the bench, bar, and legal academy, step up to the challenge of making real change.*
>
> …
>
> *Judges must be willing to take on a stewardship role, managing their cases from the outset rather than allowing parties alone to dictate the scope of discovery and the pace of litigation. Faced with crushing dockets, judges can be tempted to postpone engagement in pretrial activities. Experience has shown, however, that judges who are knowledgeable, actively engaged, and accessible early in the process are far more effective in resolving cases fairly and efficiently, because they can identify the critical issues, determine the appropriate breadth of discovery, and curtail dilatory tactics, gamesmanship, and procedural posturing.*
>
> *As for the lawyers, most will readily agree—in the abstract—that they have an obligation to their clients, and to the justice system, to avoid antagonistic tactics, wasteful procedural maneuvers, and teetering brinksmanship. I cannot believe that many members of the bar went to law school because of a burning desire to spend their professional life wearing down opponents with creatively burdensome discovery requests or evading legitimate requests through dilatory tactics. The test for plaintiffs' and defendants' counsel alike is whether they will affirmatively search out cooperative solutions, chart a cost-effective course of litigation, and assume shared responsibility with opposing counsel to achieve just results.*

(**Exhibit 2** at 9-11.)

Chief Justice Roberts further pointed out, "*Rule 1 directs that the Federal Rules 'should be construed, administered, and employed by the court and the parties to secure the just, speedy, and*

*inexpensive determination of every action and proceeding.*'" (*Id*. at 6.)  Throughout this case, the Court has exercised its "stewardship role" faithfully.  Plaintiff respectfully requests that the Court continue to do so now, using its power under Rule 16 to further the goal of Rule 1.

The Court should order the parties to mediate this dispute before a magistrate judge of this Court, and should request a report from the magistrate judge as to whether both parties mediated in good faith.  Should either party, Plaintiff included, fail to do so, the Court should take corrective action if either party either fails to negotiate in good faith or tries to turn the mediation into anything one could fairly call "protracted."

Dated: March 2, 2022.  Respectfully Submitted,

/s/ *Marc J. Randazza*

Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Email: ecf@randazza.com

David S. Wachen (Bar No. 12790)
WACHEN LLC
11605 Montague Court
Potomac, MD 20854
(o) (240) 292-9121
(f) (301) 259-3846
david@wachenlaw.com

Attorneys for Plaintiff,
St. Michael's Media, Inc.

Case No. 1:21-cv-02337-ELH

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 2nd day of March, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Marc J. Randazza
Marc J. Randazza